**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **T&J PENN MART LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No.** |

## COMPLAINT

Plaintiff T&J Penn Mart LLC, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated September 29, 2026, of the United States Department of Agriculture's ("USDA") Food and Nutrition Administration ("FNA"), affirming the temporary disqualification of Penn Mart, the retail food store owned by T&J Penn Mart LLC, from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff T&J Penn Mart LLC is a Maryland limited liability company.

3. Plaintiff T&J Penn Mart LLC is a resident and citizen of the State of Maryland.

4. T&J Penn Mart LLC is the owner of Penn Mart, a SNAP-authorized grocery store located at 1800 Pennsylvania Ave, Baltimore, Maryland 21217 ("Penn Mart" or "Store").

5. Penn Mart is a "retail food store," as such a term is defined in 7 C.F.R. § 271.2.

6. Defendant United States of America is the federal government.

7. USDA is an executive branch department of the federal government.

8. FNA is an agency of the USDA.

9. FNA administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

10. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 37 million Americans and just over 631,000 residents of Maryland. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

11. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNA asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

13. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Penn Mart, the retail food store that is the subject of this action, is located in this judicial district. Venue is also proper because the United States of America is deemed a resident of this district and has consented to suit in this district.

14. Plaintiff T&J Penn Mart LLC has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

15. Penn Mart is a retail food store that serves an impoverished community in Baltimore.

16. At all times relevant hereto, Penn Mart is and has been authorized by FNA to redeem SNAP benefits. Penn Mart's FNA-issued SNAP authorization number is 0932722.

17. At all times relevant hereto, Penn Mart trained its employees regarding SNAP in accordance with FNA requirements.

18. At all times relevant hereto, Penn Mart properly supervised its employees regarding SNAP transactions and program requirements.

19. At all times relevant hereto, Penn Mart sold SNAP-eligible staple food items.

20. Numerous items sold at Penn Mart are and were SNAP-eligible items.

21. The Food and Nutrition Act does not define "common ineligible items."

22. FNA's SNAP regulations do not define "common ineligible items."

23. FNA has not issued any publicly issued guidance defining "common ineligible items."

24. No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

25. On or about April 24, 2026, FNA's Retailer Operations Division ("ROD") sent Penn Mart a letter charging the Store with accepting SNAP benefits in exchange for common ineligible items in alleged violation of FNA's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

26. The Charge Letter alleged that Penn Mart sold isopropyl alcohol, dish soap, fabric softener and detergent in exchange for SNAP benefits ("EBT") on two occasions in December 2025 to an undercover FNA investigator.

27. On May 21, 2026, FNA issued its initial determination ("Initial Determination"). In the Initial Determination, FNA concluded that the alleged violations set forth in two attachments to the Charge Letter occurred, declined to issue a warning or assess a Hardship Civil Money Penalty ("CMP"), and disqualified the Store from participating in SNAP for six months.

28. The Initial Determination, which consisted of a short form letter, advised that FNA found that "the violations occurred at your store." The Initial Determination also failed to address the Store's request for a civil money penalty ("CMP").

29. On May 29, 2026, Penn Mart timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

30. On June 16, 2026, Penn Mart submitted its response in support of its Request for Administrative Review of the Initial Determination ("Penn Mart's Response").

31. Penn Mart's Response requested that FNA's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.

32. On September 29, 2026, FNA Administrative Review Officer ("ARO") Mya Dupree issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

33. In its FAD, ARB rejected all of Penn Mart's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon Penn Mart.

34. The FAD concluded that "The documentation presented by the Office of Retailer Operations and Compliance provides through a preponderance of the evidence that the violations as reported occurred at the Appellant firm." *Id.* at 4.

35. The FAD failed to properly address Penn Mart's argument that isopropyl alcohol, dish soap, fabric softener and detergent are not common ineligible items.

36. The FAD failed to address Penn Mart's argument that the management of the Store was not careless and did not poorly supervise its employees.

37. ARO Dupree did not conduct any independent analysis of the allegations set forth in the Charge Letter and merely relied upon the undercover investigator's report.

38. ARO Dupree also failed to note in the FAD that the Store rejected the attempted sale of non-food items during one store visit by the undercover investigator.

39. The FAD failed to meaningfully address Penn Mart's argument that a warning was appropriate.

40. The FAD rejected Penn Mart's argument that a CMP was appropriate, noting only that the Retailer Operations Division determined that there were other SNAP-authorized stores within a one-mile radius of Penn Mart, an unreasonably long distance for SNAP beneficiaries to walk each way to purchase groceries. *Id.* at 6.

41. The FAD improperly relied upon the Retailer Operations Division's determination, and ARO Dupree did not conduct her own independent analysis.

**FNA's SNAP REGULATIONS**

42. Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "common ineligible items

due to carelessness or poor supervision" (emphasis added) is a six-month term disqualification from participation in SNAP.

43. FNA is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

44. Pursuant to FNA's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNA is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

**COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279**

45. Plaintiff T&J Penn Mart LLC repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

46. Penn Mart denies that the Store engaged in violations of FNA's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

47. At no time did Penn Mart sell any "common ineligible items" in exchange for SNAP benefits.

48. At no time did Penn Mart poorly supervise its employees.

49. No evidence in the Administrative Record exists that supports FNA's determination that Penn Mart poorly supervised its employees.

50. At no time did Penn Mart act carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

51. No evidence in the Administrative Record exists that supports FNA's determination that Penn Mart acted carelessly in permitting the sale of "common ineligible items" in exchange for SNAP benefits.

52. FNA's determination that Penn Mart sold "common ineligible items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

53. FNA's determination that Penn Mart poorly supervised its employees was invalid, unreasonable, arbitrary, capricious, and unsupported by the evidence.

54. FNA's determination that Penn Mart acted carelessly in permitting "common ineligible items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and, capricious, and unsupported by the evidence.

55. FNA's six-month disqualification of Penn Mart's participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States*¸ 903 F. Supp. 118 (D.D.C. 1995) (reversing FNA's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

56. FNA's six-month disqualification of Penn Mart from participating in SNAP and denial of its request for a warning (and a Hardship CMP) should be reversed because FNA failed to consider all evidence related to the Store.

57. FNA failed to consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

58. FNA's six-month disqualification of Penn Mart from participating in SNAP and denial of its request for a warning (and a Hardship CMP) should be reversed because FNA failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

59. FNA's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Penn Mart resided.

60. FNA officials and employees did not visit other SNAP-authorized stores in the vicinity of Penn Mart in December 2025.

61. FNA did not conduct a comparison of prices of staple food items at Penn Mart and other SNAP-authorized stores in the vicinity in December 2025.

62. FNA's six-month disqualification of Penn Mart from participating in SNAP and denial of its request for a warning (and a Hardship CMP) should be reversed because FNA's analysis of other SNAP-authorized stores in the vicinity (1) failed to

consider where SNAP beneficiaries who shopped at Penn Mart resided; and (2) was not based, upon information and belief, on store visits to other SNAP-authorized retailers in the vicinity in December 2025.

63. FNA's six-month disqualification of Penn Mart from participating in SNAP and denial of its request for a warning (and a Hardship CMP) should be reversed because FNA's analysis was not based on a comparison of (a) prices charged for staple food items or (b) the variety of staple food items at Penn Mart and other SNAP-authorized stores in the vicinity in December 2025.

64. FNA's six-month term disqualification of Penn Mart from participating in SNAP and denial of its request for a warning (and a Hardship CMP) should be reversed because FNA failed to interview any SNAP beneficiaries whose EBT cards were used at the store in December 2025.

65. FNA's six-month term disqualification of Penn Mart from participating in SNAP was improper because it was not based on evidence that Penn Mart poorly supervised its employees.

66. FNA's six-month term disqualification of Penn Mart from participating in SNAP was improper because FNA had no evidence that Penn Mart acted carelessly in permitting the exchange of ineligible items for SNAP benefits.

67. FNA's denial of Penn Mart's request for a warning (and a Hardship CMP) was not rationally related to any legitimate governmental interest.

68. FNA's denial of Penn Mart's request for a warning (and a Hardship CMP) is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

69. FNA's failure to issue a warning to Penn Mart based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

70. FNA's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

71. FNA's denial of Penn Mart's request for a warning (and a Hardship CMP) represents agency action beyond the scope of authority granted by Congress to FNA when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

72. 7 C.F.R. § 278.6(e)(5) is inconsistent with the directive from Congress contained in 7 U.S.C. § 2021(a)(2) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

73. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store based on the sale of SNAP-ineligible items, those criteria are inconsistent with the directive from Congress

contained in 7 U.S.C. § 2021(a)(1) in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

74. To the extent that 7 C.F.R. § 278.6(e)(5) purports to provide criteria for the disqualification of a SNAP-authorized retailer food store disqualified from SNAP pursuant to a reciprocal disqualification of such store from the WIC program pursuant to 7 C.F.R. § 278.6(e)(8), those criteria are consistently ignored by FNA and its officials in violation of the Food & Nutrition Act of 2008 and the Administrative Procedure Act.

75. FNA's denial of Penn Mart's request for a warning (and a Hardship CMP), which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNA when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

76. District courts must exercise independent judgment in deciding whether an agency has asked within its statutory authority. *Loper Bright v. Raimondo*, 603 U.S. 369 (2024).

77. District courts should no longer grant deference to agency actions.

78. District courts should set aside agency actions that are unsupported by substantial evidence.

79. FNA's decision to deny the Plaintiff's request for a warning (and a Hardship CMP) exceeded its authority under the Food & Nutrition Act of 2008.

80. FNA's decision to deny the Plaintiff's request for a warning (and a Hardship CMP) exceeded its authority under its SNAP regulations.

81. FNA's decision to deny Penn Mart's request for a warning (and a Hardship CMP) was not supported by substantial evidence.

82. At no time did FNA provide Penn Mart with a warning that non-food items, including (but not limited to) isopropyl alcohol, dish soap, fabric softener and detergent, were being sold in exchange for SNAP benefits prior to issuance of the Charge Letter.

83. FNA should have provided Penn Mart with a warning that non-food items, including (but not limited to) isopropyl alcohol, dish soap, fabric softener and detergent, are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

84. FNA should have provided Penn Mart with a warning that non-food items, including (but not limited to) isopropyl alcohol, dish soap, fabric softener and detergent, were being sold at the Store in exchange for SNAP benefits after the first alleged violation.

85. In the event that FNA provided Penn Mart with a warning that non-food items, including (but not limited to) isopropyl alcohol, dish soap, fabric softener and

detergent, were being sold at the Store in exchange for SNAP benefits after the first alleged violation, Penn Mart would have re-trained its employees regarding SNAP requirements.

86. FNA had no basis to have concluded that isopropyl alcohol, dish soap, fabric softener and detergent are "common ineligible items."

87. A SNAP retailer charged with the exchange of common ineligible items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

88. Prior to issuing the Initial Determination, FNA failed to conduct any analysis of the variety of staple food products carried at Penn Mart or any other SNAP-authorized retailer in the vicinity during December 2025.

89. Upon information and belief, prior to issuing the Initial Determination, FNA failed to conduct any analysis of the pricing of staple food products carried at Penn Mart.

90. Upon information and belief, prior to issuing the Initial Determination, FNA failed to conduct any analysis of the pricing of staple food products carried at other SNAP-authorized retailers in the vicinity.

91. No other SNAP-authorized retailer in the vicinity sells as wide a variety of SNAP-eligible items at comparable prices as Penn Mart.

92. FNA's decision to deny Penn Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

93. FNA's decision to deny Penn Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

94. FNA's decision to deny Penn Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

95. Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNA must consider in determining whether to grant a Hardship CMP.

96. Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNA must consider in determining whether to grant a Hardship CMP.

97. 7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNA may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to

a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices." (emphasis added).

98. FNA, in issuing the FAD, relied upon records and other information never provided to Penn Mart.

99. In its FAD, FNA relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

100. Upon information and belief, in urban areas, until recently, FNA used a half-mile radius to determine whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP. Without going through the "notice and comment" procedure required by the Administrative Procedure Act, FNA appears to have modified the radius it uses in deciding whether to assess a Hardship CMPs.

101. FNA calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

102. FNA's use of a one-mile radius in urban areas for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes is arbitrary and capricious.

103. FNA's use of a one-mile radius for determining whether other SNAP retailers are "in the vicinity" for Hardship CMP purposes ignores that many SNAP beneficiaries do not have cars and do not (and cannot) walk up to two miles (round trip) to shop at a SNAP-authorized retailer.

104. SNAP beneficiaries, especially those who are elderly and/or disabled, cannot be reasonably expected to walk as much as a mile (each way) to shop at the unidentified stores referenced in the FAD.

105. No factual support exists for FNA's decision to deny Penn Mart's request for a Hardship CMP.

106. FNA relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to Penn Mart.

107. The FAD was not based upon any declarations or affidavits from USDA or FNA employees or contractors whose identities were disclosed to Penn Mart.

108. The FAD is FNA's final administrative determination that its six-month disqualification of Penn Mart from participation as an authorized SNAP retailer was properly imposed.

109. The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

110. Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act, and the evidence is not limited to the administrative record prepared by FNA.

111. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNA's SNAP regulations.

112. The FAD was based on SNAP regulations promulgated by FNA in excess of the authority granted to it (and USDA) by Congress.

113. FNA incorrectly determined that Penn Mart was not eligible for a Hardship CMP in violation of the Food and Nutrition Act of 2008 and FNA's SNAP regulations.

114. FNA's denial of Penn Mart's request for a Hardship CMP was premised upon an erroneous, unsupportable, arbitrary, and capricious interpretation of 7 C.F.R. § 278.6.

115. In issuing the FAD, FNA acted arbitrarily and capriciously by failing to consider all information submitted by or related to Penn Mart.

116. Plaintiff respectfully requests a *de novo* review of FNA's FAD, which affirmed the term disqualification of Penn Mart's store from SNAP and determined that the alleged violations took place.

117. Plaintiff respectfully requests a *de novo* review of FNA's FAD in which FNA affirmed the decision in the Initial Determination to decline to issue a warning.

118. Plaintiff respectfully requests a *de novo* review of FNA's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff T&J Penn Mart LLC respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States and issue an Order granting the following relief:

a. Reversing the FAD;

b. Vacating FNA's Initial Determination;

c. Declaring that isopropyl alcohol, dish soap, fabric softener and detergent are not "common ineligible items" under FNA's SNAP regulations;

d. Declaring the FNA's policy of not conducting store visits and failing to obtain data regarding the variety and pricing for staple food items at other SNAP-authorized stores in the vicinity is arbitrary and capricious, inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

e. Declaring that FNA's use of a one-mile radius in determining whether to assess a Hardship CMP is arbitrary and capricious, inconsistent with the Administrative Procedure Act and the Food & Nutrition Act of 2008, and exceeds the authority delegated by Congress therein;

f. Preliminarily enjoining FNA from disqualifying Penn Mart from participating in SNAP during the pendency of this action;

g. Permanently enjoining FNA from denying authorization to Penn Mart to participate in SNAP based upon the Initial Determination and the FAD;

h. In the alternative, directing FNA to impose a Hardship Civil Monetary Penalty in an amount consistent with FNA's regulations;

i. Awarding T&J Penn Mart LLC an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

j. Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 26th day of October 2026,

By: *<u>/s/ J. Mason Weeda</u>*
Joseph Mason Weeda (D. Md. Bar No. 18276)
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
Facsimile: 202.234.3550
mweeda@ofwlaw.com
*Attorneys for Plaintiff T&J Penn Mart LLC*